Please be seated. Your Honor, this is the final case of the morning. Call 211-0273. People of the State of Illinois v. Dennis Starks. On behalf of the Avalon, on behalf of the people, Mr. Richard London. On behalf of the athlete, Ronald Sager. Mr. London, you may proceed. Good morning, Your Honor. Good morning, Counsel. May it please the Court, Richard London, on behalf of the Avalon people of the State of Illinois. Your Honor, the trial judge erred in granting defendants motion to eliminate or exclude the testimony of the victim, Maria Gonzalez. The issue before this Court is not whether the defendant was prejudiced by errors relating to DNA and or rape shield of the first trial. That was decided by this Court in the 2006 opinion. It's also not the strength, or lack thereof, of the evidence in this case. Rather, the issue before this Court is whether defendant is entitled to, and or whether or not he would be deprived of a fair trial, if he's not able to cross-examine the victim regarding a prior sexual activity upon retrial in this matter. In their brief, the people demonstrated that given the facts of this case, there is no need to cross-examine the victim regarding a prior sexual activity in order to assure the defendant of a fair trial. Because the evidence of genetic material would not be offered against a defendant upon a retrial. Well, let's talk about the cross-examination that was done of Ms. Gonzalez at the time of the first trial, versus the cross-examination of Ms. Gonzalez at the new trial, were she alive? Do you believe that cross-examination would be the same? Arguably, yes. Defendant fully, or at least was afforded a full opportunity to cross-examine Ms. Gonzalez on every issue, except her prior sexual activity. Or except any issues with respect to DNA that are different today, the DNA results different today than they were at that time, correct? Well, as far as, I mean, when you say DNA, I mean, DNA as it relates to her prior activity. I mean, they wouldn't be cross-examining Ms. Gonzalez related to any of the scientific results of DNA. The cross-examination would be potentially whether or not someone else could have been the donor of the genetic material. And I gather you would probably not put in the testimony about he ejaculated into me as well? Otherwise, then maybe the DNA becomes relevant material, and it might then be subject to an issue regarding whether or not he actually did so, and therefore he doesn't have the right to cross-examine her because she's deceased? Well, the victim didn't testify that he ejaculated into her. The evidence specifically stated when questioned that she said, he may have, I felt some wetness down there. I mean, that certainly isn't consistent with her saying, yes, he ejaculated. I mean, again, let's understand that a big part of the problem from day one has been the language barrier. The alleged inconsistent statements, the testimony at trial, the interpreter, it was all fairly clear if you look at that testimony that there was, you know, fairly significant barriers between what was asked and what was answered. The victim initially stated she wasn't right when she first questioned. Well, one, we know that for a fact. The officer and the paramedic in the scene said that she was clearly traumatized and was in shock. So we don't know what that means. But even assuming for argument's sake, what does rape mean? Is this a Bill Clinton situation? I did not have sex with that woman. She said she wasn't raped. The defense has used that to basically establish that there's a mistaken identity. Why? Because she said she was raped. There's semen there. It's definitely been now established it's not defendant. So it must be a mistake. It must be another attacker. Well, didn't the state make an offer of proof that Ms. Gonzalez would testify she didn't have sexual intercourse with anyone? The state definitely made an offer of proof. And obviously, you know, we can't get around that. Right. Isn't that offer of proof, though? Isn't now that we're in a new trial with some different facts, wouldn't that offer of proof become relevant and maybe they want to cross-examine her? Very relevant. It would become very relevant. But the fact is there's a difference between under a perfect world. We would like to present the victim. Defendant would like to cross-examine her. To be honest, defendant, for lack of a better term, if there is a retrial, obviously defendant doesn't want a retrial. If there is a retrial, defendant has the advantage. Defendant will be able to demonstrate all of the testimony we're discussing. Probably it's an advantage you'd rather forego. No question. And as I just stated, defendant certainly doesn't want to be retried. Obviously, that's his, you know, in his best interest. Having said that, though, the people are the ones at a disadvantage because we're not going to be able to rehabilitate the victim. We won't be able to call her and say what, why was this, you know, was this a mistake? Was this a misunderstanding? Was this a language issue? Were you trying to cover up for there's testimony from Blanca Gonzalez, no relation, the public aid worker, relating to the fact that Maria Gonzalez may have had a hidden lover? Were you trying to cover for him? What was your reason? Was it just a matter of embarrassment? We obviously will not be able to get into any of that. Defendant will be able to bring up all of that evidence. Defendant will be able to, one, argue as he did both during trial and on direct appeal that it's a case of mistaken identity. Defendant will be able to bring the prior inconsistent statements and the offer of proof in where to... The argument that it wasn't mistaken identity, it was an out-and-out perjurious lie about the sexual assault. Because he's already been found guilty of battery, so unless there were two people there, one who battered her and one who sexually assaulted her, and if there's only one, then it seems that your argument seems to fall apart logically unless I've missed something. Actually, I believe that argument supports and it strengthens the safe's case. How? How? Because to the extent that there was alleged inconsistent statements, the inconsistent statements never stated, no one ever stated that the victim, Ms. Gonzalez, ever said, I want to get back at or I want defendant to pay because he battered me and I'm going to charge him with other activities. What, at the very least, these statements support an attempt at a crime of sexual assault. I thought she said those things to that social worker. What she said to the social worker, both the police report and the testimony of the social worker, were that the victim said, the defendant didn't want to rape me. And then when questioned further, the social worker said, well, I don't recall exactly what she said. In so many words, she said he didn't want to rape me, he wanted to have oral sex with me. So there is significant evidence, even the strong evidence. I thought the social worker also said that the victim said that she was going to make him pay for what he did to her. Right. For what he did to her. Both the beating and, at the very least, attempt at crime of sexual assault, if not actual crime of sexual assault. The testimony, again, varied as to whether or not there was contact between penis and mouth. So the paying to her was not just for the ad bat, but was for at least the concept of some sexual activity as well, which is supported, if we want to get into, again, the evidence as opposed to the cross-examination, which is supported by the scratches, not only on the arm, but the shoulder and buttocks, which arguably would only occur if defendant had indeed taken down his pants and taken off his clothes as Ms. Gonzalez was struggling. So the only evidence that we have of contact between penis and vagina indeed would be the testimony of the victim. We do have testimony corroborating some form of sexual assault. And that is both the police report, the testimony of the reporting officer and Ms. Gonzalez again. But that brings up the same point. My question is, how do we get around Crawford here? What are the guarantees of trustworthiness if we take that transcript and put it in at this trial? You know, when you just said, you know, the testimony is that he tried to put the penis to the vagina. Well, then, isn't the fact that we have DNA testimony that excludes Mr. Starks, isn't that relevant to that testimony that she gave previously concerning the attempt at sexual abuse? The scientific evidence that there's DNA that isn't Mr. Stark's is clearly relevant. The question on whether or not defendant would be deprived of a fair trial by not being able to cross-examine the victim is a separate issue. I understand that, but wouldn't he be deprived of a fair trial by not being allowed to cross-examine her with respect to the credibility of her story, the credibility of her facts of the case in light of this new evidence? Is that the best way to raise the issue of credibility? Sure. I know. It may be the best way. It may not be the best way, but that's not for us to determine. The question is the only way, and the fact is that by presenting the facts that, one, DNA clearly isn't his, and, two, by presenting the prior inconsistent statements, he can achieve that same goal. He can impeach her credibility. But does Crawford say if there's another way around doing it other than confronting, other than exercising your Sixth Amendment right to confrontation, if there's another way of doing it, then the confrontation clause can be set aside? It doesn't say that, does it? No, it doesn't. Crawford doesn't say in and of itself that, yes, you can pick and choose which methods you'd like. Crawford says, are you deprived of a constitutional right and a fair trial? And the question is, even under Crawford, he's not deprived of a fair trial. He was able to cross-examine her on everything else, including the inconsistent statements. He was not able to cross-examine her only— Are you conceding he was deprived of his confrontation right? I'd arguably concede that. I'd also say that— Let's say this, then. You're sitting as a trial judge, and you make a determination that there's a confrontation issue here, and a really significant one, where this individual may have not had the ability to adequately and fairly cross-examine on this new evidence the victim. So I'm presented with this problem. I was saying, I'm sorry, the original trial— Well, the original trial— But now I'm sitting as a trial judge now, and this motion is in front of me to let this testimony, and I say there was a problem that there wasn't a fair and adequate ability to cross-examine at the prior trial. So I see that there's a confrontation problem to let this in now. But I'm going to let it in anyway because it's not prejudicial. That doesn't make sense. Why would a trial judge now commit error and basically do its own harmless error analysis before the fact? I mean, we're not being— If the trial just let it in, and we were here now determining whether or not that error— whether it was error, and if it was, whether it was harmless, that's one thing. But it's a trial judge, and I understand you're arguing de novo. But let's assume for a minute it's abuse of discretion letting this in. Did a trial judge abuse his or her discretion by not letting this in because he or she reasonably found there was a confrontation clause problem? I'd have to answer that in two parts. Part one is if you look at whether or not—we have to take the facts in court, I mean, as given, that the defendant is deceased. The question is what deprived defendant of the right to cross-examine in the original trial? And there was much discussion in the 06 decision that the trial judge erred. The people erred in requesting the rape shield motion, and the judge erred in granting it. The fact is, as this court back in 1988 found, defendant waived that. Defendant—the original rape shield ruling was that the judge would conditionally grant it. However, defendant can re-raise it at trial based on the evidence that the people presented and any offer of proof. All of the facts that we're talking about now relating to the inconsistent statements and the people's offer of proof would have—and the police reports and the testimony of the social worker—could have all been a valid reason for defendant to breach rape shield at that time and cross-examine the defendant then. Defendant never raised that. Now, whether that was trial strategy, whether it was ineffective assistance, who knows? We can't go back and look, but this court has already found that that was waived. So the original question— But that was waived when you had different facts in the case, correct? Different facts and different theory of proof, too. It sounds to me like you are claiming that what was relevant and what, from my recollection, was considered one of the linchpins or keystones or benchmarks of the criminality of the sexual assault or the probity of it, proving it, was the semen or the DNA or the blood—actually, it was the blood serology that was found in the pants. To be honest, that was what the people argued at the original trial. It was not what this court found. This court actually said, you know what, we're taking with a grain of salt the evidence of the semen because we think that, even at that point, that the victim's testimony was substantially impeached. We would not rely—we would not be able to find a defendant guilty based just on the semen and just on the testimony. What we are relying on is not just the semen. It's the substantial, and with all due respect to the defendant's argument, people argue, strong, if not overwhelming, substantial evidence corroborating the other factors. So, again, I understand what you're saying. We're arguing that—we're discussing the concept of what was then, what is now. The fact is that defendant would have had the right and would have been allowed to cross-examine if he exercised that right. If he had done so, probably the 2006 decision wouldn't have even been rendered, or at least—I'm sorry, it would have been rendered based on the semen alone. There wouldn't have been any of the rape shield discussion. But he didn't have, at that time, these new DNA tests. Is that correct? Correct. And, again, he doesn't need to cross-examine the victim related to the new DNA test. The DNA tests speak for themselves. They're unquestioned that defendant was not the source of the genetic material. It's unquestioned that the defendant can demonstrate that. He can assert his theory that it was someone else. But it wasn't unquestioned at the time of trial, was it? No, no, it's unquestioned now. The question is, is he going to be— If the State's theory of the case changes, will it always be that the defendant will always have had the opportunity, or is it dependent on what the facts were in the old theory of the case versus the new theory of the case as to whether or not there was meaningful cross-examination in the first trial? Again, it's difficult to answer that based on the fact that he wasn't allowed, regardless of what the facts were. The old facts or the new facts, he wasn't allowed to cross-examine her. He chose not to, wasn't allowed to, however you want to put it. He chose not to, and he didn't renew the objection. He didn't renew the objection. He didn't cross-examine her relating to her prior sexual activity, under any facts, under the old facts or the current facts. Thank you, sir. You'll have an opportunity to make your motto. Thank you. Good morning, Your Honors. May it please the Court, my name is Ron Safer, and I represent Betty Starks before this Court. Your Honor, if I can start right at the end. The answer to your question, Justice McClaren, I think is very easy to answer. It is that it has to be a fact-specific inquiry. You cannot say, under a totally changed theory, without examining the facts of the case and the specifics of the theory, whether someone had an adequate opportunity to cross-examine. And that is the inquiry. So the State argues before this Court a lot about whether there's a fair trial, a lot about how it comes out, whether the defendant has an advantage, as if to be saying that, well, if the defendant has a good chance of winning, that somehow substitutes for his confrontation clause rights. The issue before this Court is whether the trial court abused his discretion when he found that there would be no adequate opportunity to cross-examine this defendant, that there wasn't an adequate opportunity to cross-examine this witness at the previous trial. And thus, based on the State's current theory, it would have been constitutional error to read her testimony before this jury. Well, if it's constitutional error, isn't that the no-go route? It isn't, Your Honor, because he has to view in context, he has to make findings as to whether or not this evidence ought to be admitted. It is an evidentiary issue in the first instance, and it does have constitutional ramifications. The State's argument, to Your Honors, that the cross-examination or any examination of Ms. Gonzalez regarding her sexual conduct is irrelevant and rendered irrelevant by the DNA doesn't pass the red-face test. The State's theory of the case now depends entirely on Ms. Gonzalez having lied about her past sexual contacts. So we know Benny Starks is not the source of the semen that is found in her vagina on her underwear. We know that. Not only is it relevant, but the entire case turns on whether Ms. Gonzalez had sexual contact with someone other than the attacker in the 30 hours prior to the attack. That's the entire case. Well, why does it turn on that when you have physical evidence, the DNA, that says that Mr. Starks did not deposit the semen, if you will, in the victim? So your defense before was that it wasn't him, he wasn't there. I assume your defense isn't going to change now, correct? That's right, Your Honor. So how is it relevant where it came from? It is critical that it came from somebody else. The attacker? Excuse me, Your Honor. The attacker? There is that attacker. Well, we will find out if she did not have sexual contact with anyone. She said, according to the State, I had no sexual contact with anyone for two weeks prior to this attack. So it could have been she was attacked by somebody else other than Benny, and that person deposited their semen in her at that time. So how is it relevant whether she had sex 30 hours before? His defense is it wasn't me, I wasn't there. That's exactly right, Your Honor. So if she did not have sex with anyone prior to that time, then it cannot be Benny Starks. Benny Starks is innocent. Yeah, but if she said, if he says it wasn't me, I wasn't there, and the DNA said it wasn't him, then apparently it's somebody else. So whether or not she had sex and what her sex life was before this rape, how is that important? It's critical. It is the case. So whether or not she had sex with somebody else determines guilt or innocence in this case, because if she did not have sex with somebody else before the attack. You're saying that in the first trial he wasn't allowed to ask this question. Exactly. Now he supposedly has the opportunity to ask the question based upon the prior judgment, but because of the felicitudes of life, it's not possible to ask that question. Therefore, it's not possible to make a meaningful defense based upon cross-examining the only witness that supposedly was present at the scene of the crime. Exactly, Your Honor. And it's the critical fact he can't ask the critical question. I understand what you're saying. I guess you're not understanding my question. Counsel's argument is whatever the answer is to that question. Either yes, I had sex with someone else or no, I did not. But you can still make these arguments that you make in page 14 or 15 of the brief, which is what you're saying. If she testified she didn't have sexual relations, you know, then this came from the attacker. If she said she didn't, you impeach her with the prior testimony. We don't know what to do. You don't know what she's going to say, but the argument is you can make this argument to the jury that no matter what she would have said. I guess that's what the argument is. I'm just presenting it to you. And if that was your honor, I apologize that I did not get that. But that gets back to what is the question before the court? Is the question before the court whether the trial as a whole is fair, whether you can somehow put before the court similar issues, or is the issue before the court whether there was a full opportunity to cross-examine this witness, whether there was ample opportunity in the words of the Illinois Supreme Court to cross-examine the witness. If there was not, the fact that there is another avenue to introduce similar evidence has no bearing on the confrontation clause issue, your honor. So the state's argument that, well, we could put on the state's attorney to testify that she said that she had not had sex for the two weeks prior, previous. 72 hours prior, correct? Well, he said more than 72 hours. That was your stipulation, I think. Right. Your offer of proof. Yes, your honor, because the offer of proof was that the semen would not stay detectable for more than 72 hours. And he said, well, judge, I will aver to the court that she did not have sex with anybody for more than 72 hours. Then they say now that we could put that evidence in, as your honor implies, that is irrelevant to the confrontation clause issue. The issue is an evidentiary question before the court. Can you read this witness's testimony to this jury, even though it is, your honors have already found, it is constitutionally deficient? It is a product of having had the defendant's cross-examination rights been deprived. And thus, that is the issue, and that is unaffected by other evidence that might be introduced at the case. You rely on the Cambry case also concerning, I think it was a preliminary hearing in that case, and that was just, that was the inability to cross-examine on probably lesser issues than we have here in this case. Exactly, your honor. And really, it is an example of Justice McLaren's last question to the state and where I started, of where you really have to look at the specific facts and the specific opportunity to cross-examine, and in light of the state's theory, to determine whether or not there was an adequate opportunity to cross-examine that witness. And it is inconceivable under these facts. So this, your honors, found under the previous facts that it was constitutionally deficient. Now, it becomes the only question, the definitive question. Not only is it the state's argument that it is irrelevant, as they must argue, because if it is relevant, then we were entitled to cross-examine, we would be entitled to cross-examine her on it, and we cannot. Not only is it relevant, it is the critical issue. Just to clarify a couple of things that came up during the state, your honor. The, your honors, the state says, well, defendant sort of has the advantage at a retrial. Again, that while it is true that no question the most powerful evidence in this case proves his innocence, that is not the issue. The issue before the court is whether the victim's testimony, reading the victim's testimony, violates the Confrontation Clause. It is. With regard to the social worker, your honor's recollection is exactly right. The social worker says that what Ms. Gonzales said to her was that she made up the sexual attack to punish her attacker, who now, indisputably, was not Mr. Starks. This court weighed all of this very carefully. The trial court did not in any way feel bound by, feel that he had no discretion to exercise in light of this court's ruling. The district court did say that this court's opinion is paramount as it is. It addressed this issue, these issues directly, and albeit under a different set of facts that Ms. Gonzales was still alive. It did have a significant influence on the trial court, but it was not that he was without discretion. Indeed, we briefed this case. He asked for additional briefing. The state chose not to participate in that, but he had two extremely lengthy oral arguments where he considered all of this, including the record evidence, including the legal issues. And he exercised that discretion. He did not abuse it. This case, Your Honors, is part of a practice of finding a theory of the case and sticking with it, regardless of the facts. The facts have now dramatically changed, and the theory, those facts are being bent to try to meet that theory. That is abhorrent. That offends justice. It is the antithesis of what the state should be doing. It demeans the people in the system, and it has to stop. And Your Honors should tell the state so. Thank you. Thank you. Mr. London? Your Honors, I'd briefly like to respond to some points. Related to the standard, we argue that it's de novo because if you look at and analyze the trial judge's ruling, regardless of how long it took, regardless of how many hearings there was, the trial judge basically said, this court said there has to be a confrontation. There isn't. Therefore, I cannot. I am granting defendant's motion. The standard definitely should be de novo review by this court. And speaking of what this court said, and I saw in your briefs that you believe that what the court said and our court says and starts to with respect to the confrontation clause or with respect to Ray Shield, was dicta? Correct. I argue that it is dicta, or if it's not, again, with all due respect towards Justice McLaren, who wrote the opinion, that it should potentially be reviewed should the 2006 decision should have been considered in light of this court's prior finding that the defendant had waived that issue. And again, the 2006 finding is not the facts we have now. The 2006 finding should have, the Ray Shield language would not or should not have been included if indeed it was waived at that time. And it was. Because under the facts, defendant could have raised and could have cross-examined or at least could have presented that issue to the trial judge at the original trial. But when we had starts to, we had a different set of facts, did we not? When we had starts to, well, yeah, we have the fact that the DNA doesn't, but that didn't preclude the fact that defendant could and should have raised the issue and could have cross-examined. The issue of what we basically have, the difference obviously is based on the DNA. We now know that Mr. Starks obviously wasn't the donor of the genetic material. But all of the same questions could have been asked. The exact same theories, and the people aren't ignoring the facts of the fact change. What the people are saying, the exact same theory and theories were raised both at the first trial and on the rect appeal. Whose theory? Defendant's theory. It wasn't him. It was a mistake. That could have been raised and could have been discussed and all of the cross-examination of the victim as to, wait a second, who did you have sex with? Did you have sex with anybody? And if she denied it, and then later the evidence demonstrates it wasn't him, and she says, and potentially they could have asked further relating to did defendant ejaculate, did he not? That's all very true, and I agree with you. But how do we get around the confrontation clause with respect to that? Do we pick and choose when we think the confrontation clause can come in because the theory of the case hasn't changed and the facts with respect to the defense really hasn't changed? That's where I'm stumbling. How do we get around Crawford? How do we get around the confrontation clause? We get around the confrontation clause, I guess, by saying, was there a meaningful cross-examination? And the people feel that there was, that the questions that would be asked now one could have been asked before. Why would a competent defense counsel, knowing that this victim very well may say, I believe he ejaculated inside of me, and brought that out across examination when your serologist said he couldn't be excluded as a source of the scene at the time? Why would you highlight that if you were a defense counsel? I mean, the whole ballgame has changed along the DNA. The theory of the case can change at that point. Well, the theory of the case has changed many times, and again, let's make it clear, defense's theory. You're saying these questions could have been asked, and I'm saying with the new information, I mean, why would you have asked that with the old information? Now, with the new information, you highlight that. Because the old information, and again, this wasn't discussed as fully, and I'm somewhat of a disadvantage in the fact that this wasn't discussed as fully in 06, but the fact is the record discloses that there was a report. The serology defendant argued, and has argued in the motion for new trial, ineffective assistance of counsel. Why would counsel have asked that? Because there was a report from the serologist that suggested that her ultimate response to the question of can Mr. Starks be excluded was actually tempered by the fact that Mr. However, there was a study, the fact that he didn't excrete the, even under the testing bill at the time, there wasn't a secretion into, in the semen. What does that mean? It means that the serologist's response that there was a 15% chance, that's for all type B secretors. Mr. Starks was a very strange little subset of that. And there was a British study that was accepted that only 3% of type B secretors could potentially be the source of this genetic material. So it wasn't 15% of all Lake County or whatever. It was 3% of 15%. Based on the specifics, again, the facts of the case, it would have been very relevant for defense counsel to have explored that possibility. By exploring that possibility, he would have very strongly limited the possibility that he could, that Mr. Starks could have been the donor of the genetic material. Based on that, it would have been very relevant to then follow up with, was there anyone else that you could have had relations with? Let's also understand that all the questions that we're talking about relate to the aggravated criminal sexual assault. The DNA evidence is not relevant in any way other than potentially impacting the credibility on the attempt at a crim sexual assault. And we will vehemently disagree with the defendant's proposition that the social worker said that he's making up the, that, I'm sorry, the victim was making up the entire sexual assault. Well, with the attempt, attempt sexual assault, you still, they still wouldn't have the opportunity to cross-examine her. And that may, that may change. But the problem, they wouldn't have an opportunity to cross-examine her, but they would have had that opportunity. I mean, that doesn't relate to the DNA. That doesn't relate to the new facts. That has no relationship to her prior sexual activity. It only has to do with impeaching her for testifying falsely, doesn't it? If she testified falsely, but they could have, they had the opportunity to ask all those questions at the first trial. But they didn't know at the first trial what they know now. Correct. But regardless of the evidence they know now, the evidence they know now has no impact on whether or not he attempted to have oral sex with her. I appreciate what you're saying. And that fact doesn't change that they could have fully examined her on that issue, and the new evidence doesn't impact that. The new evidence unquestionably has an impact on the issue of whether or not there was the act of sexual assault and or ejaculation, and or whether or not it could be someone else. It doesn't have any impact on the attempt of sexual assault. Even if this Court finds that the evidence must be examined and that the trial court judge should have looked and established what Crawford is now, what the application is now under the given set of facts, that people argue that the judge didn't do that, that he didn't exercise his discretion. Alternatively, to asking this Court to reverse the judge's willing and remanding from the trial, alternatively this Court should consider remanding back for a hearing for the judge to determine under Crawford whether or not the current evidence and whether or not the change in facts would deprive the defendant of his confrontation rights. The prior decision that I was the author of, I think, would it be fair to say is the law of the case? Yes. And unless it's manifestly erroneous, we should follow it. Isn't that what the law is? If we're talking about the remand for a new trial, certainly. If we're talking about to the extent that it says that at the first trial there was an error, I'm not sure that the law of the case determines that there's a confrontation issue upon retrial. Did the first case say that the defendant was denied meaningful cross-examination? Yes. At the original trial. Correct. Unquestionably. And if that's the law of the case and she's not there to be meaningfully cross-examined, how is reading her testimony going to change that fact? I would argue, as I have, that even given the different facts that this court did not consider, at least did not discuss, obviously I don't know what was considered, but certainly did not discuss the earlier finding, and that could very well have impacted whether or not the law of the case or whether or not the finding was accurate. Two, that still wouldn't go to the issue of the attempt at crime sexual assault. Because regards to the new facts, the DNA and the lack of confrontation was only on the prior sexual activity, which would only apply to the act of sexual assault, not the attempt at crime sexual assault. Time up. Thank you. Thank you. Court is in recess and adjourned.